IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANNETTE WILBER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:04-CV-1140-L |
| | § | |
| THARALDSON EMPLOYEE | § | |
| MANAGEMENT COMPANY, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendant's Motion for Summary Judgment, filed August 5, 2005. Upon careful consideration of the motion, response, reply, appendices, competent summary judgment evidence, and applicable law, the court **grants in part** and **denies in part** Defendant's Motion for Summary Judgment.

I.      **Procedural and Factual Background**

Plaintiff Annette Wilber ("Plaintiff" or "Wilber") brought this action on May 26, 2004 against Defendant Tharaldson Employee Management Company ("Defendant" or "Tharaldson") pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*.; Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq*.; and Chapter 103 of the Texas Labor Code. Wilber contends that Tharaldson violated the ADEA and Title VII by terminating her employment because of her age and gender, and then by replacing her with a female under the age of 40, who worked for less than two weeks before she was replaced with a male who was also under 40 years old. Pl.'s Original Compl. ¶¶ 13, 17. She also alleges that

Tharaldson violated Chapter 103 of the Texas Labor Code after it terminated her by knowingly and maliciously disclosing false information to some of her prospective employers. *Id*. ¶ 19-22.

Tharaldson filed its motion for summary judgment on August 5, 2005. It contends that no genuine issue of material fact exists with respect to any of Wilber's claims, and that it is therefore entitled to judgment as a matter of law. Specifically, it asserts that Wilber cannot establish a *prima facie* case of age discrimination because she cannot show that she was replaced by someone outside the protected class, or someone younger, or that she was otherwise discharged because of her age. Likewise, it contends that Wilber cannot establish a *prima facie* case of gender discrimination because she was originally replaced by a woman, not a man. Tharaldson also contends that even if Wilber can establish a *prima facie* case of age or gender discrimination, her poor performance and attitude constituted a legitimate, nondiscriminatory reason for the termination decision. Tharaldson further contends that Wilber cannot produce competent summary judgment evidence showing that its asserted reason for terminating her is a pretext for age or gender discrimination. Finally, Tharaldson asserts that it is entitled to summary judgment on Wilber's claim brought under Chapter 103 of the Texas Labor Code because she fails to state a claim upon which relief can be granted. It contends that Chapter 103 does not create a private cause of action; it instead provides immunity for employers who make good faith job references.

On August 24, 2005, Wilber filed her Response in Opposition to Defendant's Motion for Summary Judgment. Although she did not respond regarding her claim under Chapter 103, she contends that she has set forth competent summary judgment evidence raising genuine fact issues for both her ADEA and Title VII claims, and requests the court to deny the motion and allow the claims to proceed to trial. The court now sets forth the facts upon which it relies to resolve the

motion.  In setting forth the facts, the court applies the summary judgment standard as set forth in the following section.

Wilber is a 54 year-old female.  Def.'s App. at 5.  She was hired by Tharaldson on February 22, 1999 as an Assistant General Manager for the Plano Fairfield Inn, a Marriott Hotel in Plano, Texas, where she worked until she was terminated on February 17, 2003.  *Id.* at 24, 88, 120.  During nearly four years of employment at the Plano Fairfield Inn, Wilber was supervised by three different General Managers, one replacing the other. *Id.* at 88-90.  Wilber and the General Manager reported to Sheila Thomson ("Thomson"), the Tharaldson Area Director responsible for managing 11 hotels, including the Plano Fairfield Inn.  *Id.* at 88.

The basis of Wilber's gender and age discrimination claims is a statement she avers was made by General Manager Charles Berryhill ("Berryhill"), her immediate supervisor, on December 17, 2002.[1]  App. to Br. in Opp. to Def.'s Mot. for Summ. J. at 43.  According to Wilber, Berryhill told her, "[b]ecause of your age, you have a selective memory, and a man would never have that."[2] *Id.*  This statement occurred exactly two months before Wilber's termination.  *Id.*  It is undisputed that the statement was not witnessed, and that Wilber did not report the statement to human resources or to a supervisor, including Thomson.  *Id.* at 44; *see* Reply to Pl.'s Resp. to Def.'s Mot. for Summ. J. at 9.

---

[1]Both parties in their briefing state that the statement was made, if at all, in October of 2002.  Wilber's deposition testimony is the only summary judgment evidence addressing the statement, and averred that Berryhill made the statement on December 17, 2002.  *See* Pl.'s App. at 43.  Therefore, for purposes of this motion, the court determines that the statement was made on December 17, 2002.

[2]Because this is a summary judgment motion, the court assumes the truth of the statement since it appears in the record, and the court gives credence to evidence favoring Wilber, the nonmoving party.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

**Memorandum Opinion and Order  - Page 3**

Wilber worked under General Manager Joyce Crabb ("Crabb") from her hiring date through February 25, 2001, when Crabb was replaced. Def.'s App. at 88. Crabb conducted a written evaluation of Wilber on March 15, 2001. *Id.* at 97. She gave Wilber overwhelmingly positive remarks, the only noticeable criticism appearing in the "Guest Satisfaction/Client Relations" category, where Crabb remarked, "When Annette is rushed or under pressure she has a tendency to speak abruptly which has been perceived, at times, as rudeness." *Id.* at 94. There is no evidence that Crabb ever issued Wilber a written reprimand.

Chris Carlsson ("Carlsson") replaced Crabb as the General Manager in the spring of 2001, until he was later replaced in June 2002. *Id.* at 89. Wilber and Carlsson had numerous work-related disagreements, and Thomson mediated differences between them on several occassions. *Id.* There is no evidence that Carlsson ever issued Wilber a formal evaluation or any type of written reprimand.

In October 2001, Thomson sent Wilber to Tharaldson's corporate headquarters in Fargo, North Dakota for a four-week training program for potential General Managers. Pl.'s App. at 17-18. Wilber failed one of her training tests and was told by the head trainer that she had poor coping and problem-solving skills. *Id.* at 18. Those in charge of the training program informed Thomson that they would allow Wilber to pass only if Thomson agreed never to appoint Wilber to General Manager. Def.'s App. at 89.

Berryhill became General Manager of the Plano Fairfield Inn in June 2002. *Id.* When he arrived, the hotel posted a failing "guest rating," a protocol Tharaldson uses to track hotel performance, which is determined by evaluating questionnaires completed by hotel guests. *Id.* at 89, 100. In October 2002, Berryhill met with key members of the hotel staff, including Wilber, and

presented each with an individually tailored "action plan." *Id*. Thomson attended the meeting between Berryhill and Wilber, and Wilber received and signed her action plan on October 31, 2002. Pl.'s App. at 22. Wilber states that she signed an action plan, but that the plan Tharaldson attached as part of its appendix is not the plan she signed, even though it bears her signature. *Id*. She admits, however, that the responsibilities enumerated in the action plan she signed were identical to those shown in the document Tharaldson has attached. *Id*. at 23. The responsibilities in her action plan included: "[m]ust work 3 shifts or 24 hours (scheduled) on the front desk alone"; "[p]rovide back[up] for the front desk agents to [e]nsure quality guest service is practiced and given. Example of backup would be 11am-7pm on the days not on a scheduled shift"; "[a]lways reflect a professional and positive attitude towards guests and staff"; "[r]espect ALL other employees and team members." Def.'s App. at 104.

On November 15, 2002, Thomson, Berryhill, and Wilber agreed that Wilber's front desk department was to achieve a service score of 70% by December 31, 2002. Pl.'s App. at 26. According to Tharaldson, both Thomson and Berryhill orally informed Wilber that, "consistent with the way we treated the other department heads and supervisors," her failure to achieve this goal would result in disciplinary action, including possible termination. Def.'s App. at 90, 101. Wilber counters that she was never told she would suffer disciplinary action of any type if the goal was not achieved. Pl.'s App. at 26. On December 13, 2002, Berryhill issued Wilber a "coach/counsel form" stating, among other things, that Wilber "must [e]nsure [the] front desk is operating efficiently" and "must work as part of a team and effect that attitude towards the staff." Def.'s App. at 106. The form further stated that if Wilber did not correct her behavior within 30 days, she could be

suspended.[3]  *Id.*  That same day, on December 13, 2002, Berryhill instructed Wilber to prepare two possible front desk work schedules and submit them to him by December 17, 2005.  *Id.* at 60, 101, 107; Pl.'s App. at 30.  Wilber avers that Berryhill told her, "Because of your age, you have a selective memory, and a man would never have that," in response to what he perceived as her failure to meet the December 17th deadline.[4]  Pl.'s App. at 43.  Two days later, on December 19, 2002, Berryhill issued Wilber a written "Employee Warning Notice" for her "failure to follow instructions."  Def.'s App. at 109.  The "Expectation for Performance/Activity" portion of the notice states, "Annette will complete the list and two options of a possible schedule for front desk by Friday morning[,] December 20, 2002."  *Id.*

Wilber went on vacation in late December 2002 and into the beginning of January 2003. Pl.'s App. at 34.  Before Wilber left, she posted a proposed front desk schedule allowing her to begin working earlier each day and to leave by 4:00 p.m..  *Id.*  Berryhill changed the schedule so that Wilber would begin her workday later and be onsite until at least 8:00 p.m..  *Id.*; Def.'s App. at 101. When she returned from vacation, Wilber confronted Berryhill regarding the schedule changes; she was upset about working the hours required by his revision and because he did not consult her before the revision.  Pl.'s App. at 34; Def's App. at 101.  According to Wilber, Berryhill had no business justification for revising the schedule, as there was little front desk activity in the evenings.  Pl.'s App. at 35.

---

[3]Wilber avers that Berryhill rushed her into signing the form and never informed her that she faced possible suspension if she did not correct her behavior within 30 days.  Pl.'s App. at 27-28.

[4]Wilber says she placed the schedules in Berryhill's work mailbox by the December 17, 2002 deadline, that the schedules were not saved on any computer, and that she attached the only copies to the originals.  Pl.'s App. at 31. According to Tharaldson, Wilber failed to submit the schedules on December 17, 2005, and failed to do so again on a readjusted deadline of December 18, 2005.

In January 2003, Wilber approached Thomson and told her she was going to look for another job. Def.'s App. at 90. Thompson prepared a reference letter stating that Wilber "has always been willing to help out with extra duties" and "is very dedicated and hard working and would be an asset to any employer." Pl.'s App. at 50.

On January 29, 2003, Marriott issued a "Non-Complaint Items Success Plan" to the Plano Fairfield Inn. Def.'s App. at 102, 114-118. The plan specified "critical items" the hotel needed to remedy in order to remain compliant with company standards, and assigned each management member, including Wilber, responsibility for ensuring that particular tasks were completed. *Id*. Tharaldson offers as evidence a copy of the plan showing February 7, 2003 as the deadline for all management members, including Wilber, to complete their assigned tasks. *Id*. at 114-118. Wilber avers that she received a copy of the plan which did not contain completion deadlines for any of her assigned tasks. Pl.'s App. at 41. She states that she performed all of her assigned tasks within one week of receiving the plan, and that she most likely did so before February 7, 2003, although she says no one informed her that this was the completion deadline. *Id*. Tharaldson does not address whether Wilber received a copy of the plan mentioning the deadline date; it simply states that Wilber failed to complete her assigned tasks by February 7, 2003 and had not done so when she was terminated ten days later. *See* Def.'s App. at 102.

Wilber received another written "Employer Warning Notice" from Berryhill on February 11, 2003, this time for "[c]arelessness," after at least $100 was discovered missing from a cash drop envelope she had verified and deposited in the hotel safe. Def.'s App. at 72,119. Wilber acknowledges that one of her job responsibilities was to ensure that all cash deposits of money received by the front desk were accurate. Pl.'s App. at 42.

Wilber was terminated on February 17, 2003 when Berryhill issued her a third "Employee Warning Notice." *Id.*; Def.'s App. at 72, 120. The parties differ as to whether Berryhill or Thomson decided to terminate her. Pl.'s App. at 46-47; Def.'s App. at 90, 102. The notice states that Wilber committed violations of "Unsatisfactory Work Quality" and "Failure to Follow Instructions." Def.'s App. at 120. The "Employer Statement" portion of the notice states:

> Annette was given an action plan to correct items in her departments from our QA from Marriott. Due date was 2/7/03. Still not have been completed as of 2/17/03. Failed to complete another list with exact items prior to QA, due date 1/24/03.

*Id.* At the time of Wilber's termination, six out of the ten properties managed by Thomson had female General Managers. *Id.* at 90.

Tharaldson states that Wilber's "poor performance and attitude" was a legitimate, non-discriminatory reason for her termination. Def.'s Br. in Supp. of Mot. for Summ. J. at 2. It contends that the summary judgment record is replete with Wilber's documented performance and attitude problems spanning many years and many supervisors of all ages and both genders. Moreover, it proffers a letter, written by a Marriott hotels "Platinum Member," and sent to Marriott's Chief Executive Officer on December 27, 2003, complaining, among other things, that Wilber treated the customer and his wife "with a total lack of respect" during their stay. *See* Def.'s App. at 110-12. Finally, Tharaldson asserts that the record indicates Thomson, and not Berryhill, decided to terminate Wilber.

Wilber disputes Tharaldson's stated reason and supporting evidence. She contends that Berryhill carried out a "calculated plan" to "get rid" of her by "preparing action plans, coach/counseling forms, and employee warning notices," thereby creating a paper trail used "in an attempt to legitimize" his decision to terminate her, which he actually based on her age and gender.

Pl.'s Br. in Opp. to Def.'s Mot. for Summ. J. at 2-3.  Wilber avers that Berryhill altered the October 31, 2002 action plan after she signed it; coaxed her into signing the December 13, 2002 coach/counsel form; and falsified the February 11, 2003 warning notice regarding the cash shortage. Pl.'s App. at 22-31, 42.  She concedes, however, that she never physically saw Berryhill alter a document.  Finally, Wilber states that she was terminated by Berryhill, and not Thomson.

It is undisputed that Wilber was originally replaced by a woman named Tonja Strait ("Strait").  Pl.'s Original Compl. ¶ 14, 17; Def.'s App. at 90, 102.  On April 4, 2003, Tharaldson sent Strait a letter confirming her position as the Plano Fairfield Inn Assistant General Manager, listing her start date as May 19, 2003.  Def.'s App. at 121-22.  Straight  resigned from her position on May 20, 2003 after working only 1 day.  Pl.'s App. at 49.  No summary judgment evidence has been produced stating Strait's age as of May 19, 2003, and, likewise, the gender of Strait's replacement, as well as whether such person was under the age of 40, or younger than Wilber, at the time of the replacement.

## II.    Summary Judgment Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual

record in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Ragas*, 136 F.3d at 458.  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue.  *Matsushita*, 475 U.S. at 586.  Mere conclusory allegations are not competent summary judgment evidence and thus are insufficient to defeat a motion for summary judgment.  *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.  *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim.  *Ragas*, 136 F.3d at 458.  Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment.  *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992), *cert. denied*, 506 U.S. 832 (1992).  "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248.  Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion.  *Id.*  If the nonmoving party fails to make a showing sufficient to

establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

**III.    Analysis**

**A.  Wilber's ADEA and Title VII Claims**

**1.  The Applicable Standard of Proof**

Wilber contends that she suffered discrimination because of her age and gender, resulting in her intentional wrongful termination, and has brought claims under the ADEA and Title VII.  The ADEA and  Title VII prohibit an employer from discriminating against any individual in hiring or discharge, or with respect to his compensation, terms, conditions, or privileges of employment, on the basis of age or sex.  29 U.S.C. § 623(a)(1); 42 U.S.C. § 2000(e)-2(a)(1).  A plaintiff can prove a claim of intentional discrimination by direct evidence, circumstantial evidence, or both.  *Desert Palace*, *Inc. v. Costa*, 539 U.S. 90, 100 (2003); *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).

Wilber contends that she has direct and circumstantial evidence of age and gender discrimination.  Tharaldson counters, stating Wilber has not provided direct evidence of either type of discrimination.  It asserts that summary judgment should be granted on both claims, even when circumstantial evidence is used, arguing Wilber cannot establish a *prima facie* case of age or gender discrimination; and even if she can, she has failed to offer sufficient competent summary judgment evidence suggesting that its reason for terminating her was a pretext for either age or gender discrimination.  The court examines Wilber's ADEA claim and her Title VII claim using the appropriate analysis for the direct and circumstantial evidentiary frameworks.

### 2.  Direct Evidence

Tharaldson contends that Wilber has not provided direct evidence of either age or gender discrimination.  "Direct evidence" is "evidence which, if believed, proves the fact [in question] without inference or presumption."  *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003) (citations omitted).  If an inference is required for the evidence to be probative as to an employer's discriminatory animus in terminating the former employee, the evidence is circumstantial, not direct.  *Sanstad v. CB Richard Ellis, Inc*., 309 F.3d 893, 897-98 (5th Cir. 2002), *cert. denied*, 539 U.S. 926 (2003).  Direct evidence includes any statement or document which shows on its face that an improper criterion served as *a* basis, though not necessarily *the* basis, for the adverse employment action.  *Fabela*, 329 F.3d at 415.  "When a person or persons with decision making authority evinces racial animus[,] that may constitute direct evidence of discrimination." *Jones v. Robinson Prop. Group*, ___ F.3d ___, Nos. 04-60688, 04-60924, 2005 WL 2500905, at *4 (5th Cir. Oct. 11, 2005) (citations omitted).  "If an employee presents credible direct evidence that discriminatory animus at least in part motivated, or was a substantial factor in the adverse employment action, then it becomes the employer's burden to prove by a preponderance of the evidence that the same decision would have been made regardless of the discriminatory animus." *Id*. at *3.

Wilber contends that Berryhill's statement, "[b]ecause of your age, you have a selective memory, and a man would never have that," constitutes direct evidence that discriminatory animus played a role her termination.  She argues that Berryhill's statement, taken alone, proves that age or gender discrimination served as a criterion in her termination, as the words show that Berryhill wanted a younger male to be the Assistant General Manager.  Tharaldson counters, reasoning that

even if Berryhill made the statement, it is not direct evidence of discrimination because an inference is required to connect the statement to the act of termination, which occurred two months later.

The court has viewed the evidence in the light most favorable to Wilber, drawing all reasonable inferences from the record in her favor and assuming the truth of the statement, and determines that an inference is required to find a relation between the discriminatory animus found in the statement and Wilber's termination. *See Sanstad*, 309 F.3d at 898. Berryhill's words do not themselves constitute an employment action; they were not spoken during a discussion about a present, past, or future employment action; they do not reflect why an employment action was made; nor do they indicate that a future employment action will, or should, take place. Simply put, the statement, standing alone, is insufficient to support the conclusion that a nexus exists between the statement and her termination. *See Fabela*, 329 F.3d at 416. Although the statement is boorish, uncouth, insensitive, and rude, it does not carry the day to establish direct evidence of age or gender discrimination in Wilber's termination. A logical inference is needed to transform such statement into a determination that the discriminatory animus "at least in part motivated, or was a substantial factor," in the decision to terminate. *Cf. Jones*, 2005 WL 2500905, at *3; *see Fabela*, 329 F.3d at 415. Accordingly, Wilber has failed to produce direct evidence of age or gender discrimination.

### 3. Circumstantial Evidence

Since Wilber has presented no direct evidence of age or gender discrimination, she must rely on circumstantial evidence. The court must first determine the applicable standard of proof it will use to evaluate her claims; namely, whether the claims will be analyzed pursuant to the "pretext" method articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), or the "mixed-motive" circumstantial evidence analysis, called the "modified *McDonnell Douglas*" approach, set

forth in *Desert Palace* and subsequent cases.  *See Desert Palace*, 539 U.S. at 101-02; *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 340 (5th Cir. 2005); *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).  Because neither party requests the court to apply a mixed-motive analysis, and Wilber does not acknowledge that Tharaldson had a legitimate reason for terminating her, the court will analyze her ADEA and Title VII claims pursuant to the *McDonnell Douglas* burden-shifting framework.

The *McDonnell Douglas* framework requires a plaintiff to first establish a *prima facie* case of discrimination by a preponderance of the evidence.  *McDonnell Douglas*, 411 U.S. at 802; *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).  If plaintiff establishes a *prima facie* case, there is a presumption of discrimination, and the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the challenged employment action.  *Reeves*, 530 U.S. at 142; *McDonnell Douglas*, 411 U.S. at 802.  If such a showing is made, the presumption dissipates, and the burden shifts back to the plaintiff, who survives summary judgment if she is able to demonstrate that the articulated reason was merely a pretext for intentional discrimination.[5] *McDonnell Douglas*, 411 U.S. at 802; *Septimus v. University of Houston*, 399 F.3d 601, 609 (5th Cir. 2005).

---

[5]The court notes that *Desert Palace* and the subsequent "modified *McDonnell Douglas*" approach in no way affects its analysis of a purely pretext case, such as this one.  *Keelan*, 407 F.3d at 340 (citing *Raytheon Co. v. Hernandez*, 540 U.S. 44, 49 & n.3 (2003)).  For a plaintiff to survive summary judgment under the "modified *McDonnell*" approach, once the burden returns to her, she must offer sufficient evidence to create a genuine issue of material fact that either (1) the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive alternative).  *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 352 (5th Cir. 2005); *Rachid*, 376 F.3d at 312 (internal citations and quotations omitted).

**Memorandum Opinion and Order  - Page 14**

### a.  ADEA Claim

### i.  Wilber's Prima Facie Case

Tharaldson argues that it is entitled to summary judgment on Wilber's ADEA claim because she has failed to establish a *prima facie* case of age discrimination.  To establish a *prima facie* case of age discrimination, a plaintiff must show that she (1) was discharged; (2) was qualified for the position; (3) was within the protected class at the time of discharge; and (4) was either replaced i) by someone outside the protected class, ii) by someone younger, or iii) otherwise discharged because of her age. *Machinchick v. PB Power*, *Inc.*, 398 F.3d 345, 350 (5th Cir. 2005) (citing *Rachid*, 376 F.3d at 309).  Regardless of how much younger her replacement is, a plaintiff in the protected class may still establish a *prima facie* case by producing evidence that she was otherwise discharged because of her age.[6]  *Rachid*, 376 F.3d at 309.

Tharaldson contends that Wilber cannot establish a *prima facie* case of age discrimination because she has produced no evidence showing whether Strait was under 40 years old, or younger than Wilber, when she replaced Wilber on May 19, 2003; and, likewise, no evidence exists showing who became the Assistant General Manager after Strait resigned, much less whether such person was under the age of 40, or younger than Wilber, at the time of the replacement.  Wilber, citing *Davis v. CSC Logic*, *Inc.*, 82 F.3d 651, 654 (5th Cir. 1996), contends that she may establish the fourth element by showing that she was terminated because of her age.  Wilber is correct; she need not demonstrate replacement by someone under 40 or by someone younger than she. *See Rachid*, 376

---

[6]Tharaldson asserts that the "otherwise discharged because of her age" prong of the fourth element is limited to cases involving evidence of disparate treatment, and cites *Okoye v. University of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001), a Title VII case.  The court disagrees. *See Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 576 (5th Cir. 2003) (holding that requiring plaintiff to use disparate treatment evidence to establish the fourth element of her ADEA *prima facie* case "runs counter to *Reeves* . . . .").

F.3d at 315.  Since the record is devoid of evidence showing Strait's age as well as the age of Strait's replacement, under *Reeves*, Wilber must show that she was otherwise discharged because of her age. *See Reeves*, 530 U.S. at 142; *Rachid*, 376 F.3d at 309.

*Machinchick* provides guidance as to what evidence may be used to show that a plaintiff was "otherwise discharged because of [her] age" in establishing the fourth element of a *prima facie* case of wrongful termination based on age discrimination.  *See Machinchick*, 398 F.3d at 353-54.  There, the court determined that the plaintiff had established the fourth element by proffering evidence including: (1) an e-mail discussing the company's intention to hire younger engineers and designers; (2) a business plan expressing the goal of hiring employees with "21st Century" mindsets; (3) several age-stereotyping remarks; (4) disparate treatment of younger employees; and (5) inquiries about when the plaintiff planned to retire.  *See id*. at 353-54.  Although the plaintiff presented additional evidence raising fact issues, the court determined that the workplace remarks themselves gave "rise to an inference that Machinchick was terminated because of his age."  *Id*. at 353. Regarding the ageist remarks, the court made clear that "[p]urely indirect references to an employee's age, such as comments that an employee needed to look 'sharp' if he were going to seek a new job, and that he was unwilling to 'adapt' to change, can support an inference of age discrimination."[7] *Id*. at 353 (citations omitted).  The Fifth Circuit commented on these same indirect references in *Rachid*, a previous decision, concluding that the references were "rather nebulous" but nevertheless had been found sufficient for a plaintiff to avoid summary judgment.  *See Rachid*, 376

---

[7]In *Machinchick*, the plaintiff's supervisor wrote an e-mail to human resources stating that the plaintiff has a "[l]ow motivation to adapt" to change.  *See Machinchick*, 398 F.3d at 353.  In *Rachid*, the plaintiff's supervisor made the statement, "[A]nd don't forget it, [Rachid], you're too old, too."  *See Rachid*, 376 F.3d at 315.

**Memorandum Opinion and Order  - Page 16**

F.3d at 315 (citing *Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1506-07 (5th Cir. 1988)).

In this case, Wilber provides evidence of a workplace remark capable of raising a reasonable inference that she was otherwise discharged because of her age.  Berryhill's statement, "[b]ecause of your age, you have a selective memory, and a man would never have that," is not nebulous; it is also stronger than the statement in *Machinchick*, *e.g.*, 398 F.3d at 353.  Berryhill's statement is a "substantially more egregious" remark akin to the statement in *Rachid*, and raises a fact issue concerning potential age discrimination.  Because Wilber has raised an issue of material fact as to whether she was otherwise discharged because of her age, she establishes a *prima facie* case of age discrimination.  *See Sandstad*, 309 F.3d at 899.

### ii.  Tharaldson's Legitimate, Nondiscriminatory Reason

As Wilber's *prima facie* case has been established, there is a presumption of age discrimination, and the burden shifts to Tharaldson to articulate some legitimate, nondiscriminatory reason for her termination.  *McDonnell Douglas*, 411 U.S. at 802-804; *Russell*, 235 F.3d at 222.  Tharaldson asserts that it terminated Wilber for her "repeated performance and attitude problems."  *See* Def.'s Br. in Supp. of Mot. for Summ. J. at 16.   Poor job performance is a legitimate, nondiscriminatory reason to terminate an employee.[8]  *Little v. Republic Ref. Co., Ltd.*, 924 F.2d 93, 96 (5th Cir. 1991).  Tharaldson has thus met its burden, and now the burden shifts back to Wilber to demonstrate that Tharaldson's articulated reason is a pretext for intentional discrimination.

---

[8]Tharaldson has articulated one reason for her discharge: "poor performance and attitude."  It has not bifurcated its presentation of evidence into categories of "poor performance" and "poor attitude."   Moreover, Tharaldson cites *Valdez v. San Antonio Chamber of Commerce*, 974 F.2d 592, 296 (5th Cir. 1992), for the proposition that "poor job performance" is a legitimate, nondiscriminatory reason.  Accordingly, the court determines that Tharaldson's articulated reason is "poor job performance" and will consider any evidence Tharaldson offers as to Wilber's "poor attitude" in terms of its effect on her job performance.

**Memorandum Opinion and Order  - Page 17**

### iii.  Pretext Analysis

Wilber contends that Tharaldson's proffered reason for terminating her is a pretext.  A "plaintiff can survive summary judgment by producing evidence that creates a jury issue as to the employer's discriminatory animus or the falsity of the employer's legitimate nondiscriminatory explanation."  *Sandstad*, 309 F.3d at 897.  "Pretext-plus" is not required to support an inference of discrimination.  *Russell*, 235 F.3d at 223.  "[A] plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated," and may therefore be enough to prevent summary judgment.  *See Reeves*, 530 U.S. at 148, *Sandstad*, 309 F.3d at 897.  This showing may not be enough to prevent summary judgment, however, if "the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred."  *Reeves*, 530 U.S. at 148.

The "establishment of a *prima facie* case of age discrimination and evidence casting doubt on the veracity of the employer's explanation is sufficient" for a plaintiff to survive summary judgment on an ADEA claim.  *See Palasota v. Haggar Clothing Co*., 342 F.3d 569, 576 (5th Cir. 2003); *Machinchick*, 398 F.3d at 350-51.  In support of her contention that a pretext exists, Wilber offers a reference letter Thomson wrote on her behalf in January 2003, the month preceding the February 17, 2003 termination.  In the letter, Thomson states Wilber "has always been willing to help out with extra duties," and is "very dedicated and hard working and would be an asset to any employer."  Pl.'s App. at 50.  Although Tharaldson admits that Thomson wrote the letter, it offers

no evidence or argument explaining why Thomson provided Wilber such a favorable reference if, in fact, she did not deserve one.   A reasonable jury could thus conclude that although Thomson approved and participated in the decision to discharge Wilber one month after writing the letter, she did not do so because Wilber had performance and attitude problems.  *See Russell*, 235 F.3d at 224.

Wilber also offers a guest comment evaluation dated February 2, 2003, just 15 days before she was terminated.  The guest wrote, "[a]ll staff were incredibly nice!!  Annette [Wilber] was great - she remembered my name - it felt like I was coming home each evening."  Pl.'s App. at 51. Tharaldson has emphasized to the court the tremendous weight is assigns guest satisfaction in determining how its hotels and employees perform.  In light of Tharalson's emphasis, and the praise Wilber received from the guest, the court determines that a reasonable jury could find that the guest's remarks conflict directly with Tharaldson's assertion that Wilber was terminated because of job performance and attitude problems.

Additionally, Wilber offers the written evaluation Crabb conducted on March 15, 2001, which contains the statement, "Annette Wilber is one of the finest employees I have ever had the privilege to work with."  *Id*. at 52-56.  The court has considered this evaluation insofar as it supports Wilber's averment that Berryhill is the only General Manager, of the three who have supervised her, to discipline her.  Wilber also offers a General Manager Training Evaluation dated October 26, 2001, confirming her completion and overall passing grade of the four-week general manager training program conducted in Fargo, North Dakota.  *Id*. at 57-58.  The court determines that evidence submitted by both parties regarding Wilber's performance at this training program is of little moment, since the program, which occurred in October 2001, and her termination, which occurred on February 17, 2003, are not proximate in time.

**Memorandum Opinion and Order  - Page 19**

Finally, Wilber offers Berryhill's statement, "[b]ecause of your age, you have a selective memory, and a man would never have that," as evidence of pretext.[9]  Pl.'s App. at 43.  "Oral statements constitute evidence of discrimination if [1] they indicate age-based animus and [2] the speaker is principally responsible for the plaintiff's firing."  *Sanstad*, 309 F.3d at 899 (citations omitted).  A reasonable jury could conclude that Berryhill exhibited discriminatory animus when he made the statement.  *See Machinchick*, 398 F.3d at 353.  As to the second inquiry, it is insignificant whether Berryhill or Thomson made the official decision to terminate Wilber.  Courts do not "blindly accept the titular decisionmaker as the true decisionmaker."  *Russell*, 235 F.3d at 227 (holding that courts look "to who actually made the decision or caused the decision to be made, not simply to who officially made the decision").  Berryhill directly supervised Wilber, issued all three "Employer Warning Notices" to her, and his name appears on the notice which terminated her employment.  Def.'s App. at 120.  Moreover, written declarations provided by Thomson and Berryhill suggest that Berrryhill discussed Wilber's employment status with Thomson before the termination occurred.[10]  Accordingly, it is possible for a jury to find that Berryhill "was motivated by age-based animus and was principally responsible for [Wilber's] firing" regardless of whether Berryhill or Thomson made the official termination decision.  *See Russell*, 235 F.3d at 228 (quoting *Reeves*, 530 U.S. at 151).  After *Reeves*, so long as remarks are not the only evidence of pretext, they

---

[9]A plaintiff may offer a workplace remark as additional evidence of age discrimination, as pretext, or both. *Russell*, 235 F.3d at 225 n.9.

[10]Thomson's declaration states, "Mr. Berryhill and I discussed the ongoing problems we were having with Ms. Wilber, and I approved and participated in the decision to discharge her."  Def.'s App. at 90.  Similarly, Berryhill's declaration states, "I consulted with Ms. Thompson, and she approved the decision to terminate Ms. Wilber's employment."  *Id*. at 100.

**Memorandum Opinion and Order  - Page 20**

are probative of discriminatory intent.  *Palasota*, 342 F.3d at 577.  As demonstrated, the statement made by Berryhill is not the only evidence of pretext Wilber offers.

Although Defendant contests Wilber's ADEA claim, it has not offered evidence of such magnitude that a reasonable jury could only find in its favor.  *See Russell*, 235 F.3d at 219.  It is clear that Berryhill issued all three employer warning notices after December 17, 2002, the date he made the statement.  In fact, the time period in which Berryhill issued Wilber the coach/counseling form, as well as these notices, is essentially the same time frame between the date Berryhill made the statement and the date of Wilber's termination.  The court will allow a jury to decide whether any connection exists between Berryhill's disciplining Wilber and the statement she avers that he made.  *See Reeves*, 530 U.S. at 147; *Russell*, 235 F.3d 223 n.4.

The court will not consider the letter Tharaldson offers.  This  letter, dated December 27, 2002, was written by Vincent D'Onofrio, a Marriott hotels "Platinum Member," who stayed at the Plano Fairfield Inn.  Def.'s App. at 110-112.  D'Onofrio lodged many complaints about his stay in the letter, including a complaint that Wilber treated him and his wife "with a total lack of respect." *Id*.  The court has examined notes taken by Berryhill during a January 23, 2003 meeting with him, Wilber, and Thomson.  A portion of these notes states, "Write ups - Donofrio issue . . . didn't write you up - I think that was unfair to everyone else." *Id*. at 113.  Having reviewed these notes, the court will not permit Tharaldson to use the letter as evidence of Wilber's performance and attitude problems when Berryhill, her own supervisor, apparently believed the letter to be an unfair critique of the Plano Fairfield Inn and its employees.  Accordingly, it has disregarded the letter in making all summary judgment determinations.

Tharaldson also proffers a copy of Marriott's "Non-Compliant Success Plan," issued January 29, 2003. *See* Def.'s App. at 114-118. Wilber avers that she received a copy of the plan which did not mention the February 7, 2003 completion deadline for any of her assigned tasks; and, moreover, that she performed all of her assignments within one week of receiving her copy, and most likely did so before February 7, 2003. Pl.'s App. at 41. She states that she made handwritten notations recording the date she completed each task on her copy, and placed the copy in Berryhill's office mailbox. *Id*. at 40. Because this is the summary judgment stage, the court will take as true that Wilber received a copy of the plan which did not mention the February 7, 2003 deadline. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

Tharaldson's assertion that Wilber was fired by Thomson, a female who is two years younger than she, is relevant and appropriate for the jury to consider, but "is certainly not dispositive." *See Russell*, 235 F.3d at 229 (quoting *Reeves*, 530 U.S. at 153). Likewise, evidence that, at the time of Wilber's termination, six out of the ten properties managed by Thomson had female managers, does not qualify as "abundant and uncontroverted independent evidence that no discrimination had occurred." *See Reeves*, 530 U.S. at 148. This evidence might be pertinent had Wilber asserted evidence of disparate treatment, but it does little to counter evidence in the record suggesting that Tharaldson's proffered explanation is a pretext. *See Machinchick*, 398 F.3d at 353 n.26. Moreover, the court has examined the February 11, 2003 employer warning notice Berryhill issued to Wilber for "[c]arelessness" after at least $100 was discovered missing from a cash drop envelope she had verified and deposited in the hotel safe. The court recognizes that Tharaldson points to the missing money as an example of Wilber's poor job performance, but it believes that the total picture should be presented to a factfinder for determination whether Tharaldson was actually motivated by

Wilber's job performance, or because of some discriminatory animus. A jury could find the missing money to be insignificant, or could find that the missing money, alone or with other evidence, justified the decision to terminate Wilber.

The court has an additional concern, which is the December 18, 2002 employer warning notice that Berryhill issued to Wilber one day after making the statement. The words "[s]ee attached page" appear in the "Employer Statement" portion of the notice, yet the attached page is not included in Tharaldson's Appendix. *See* Def.'s App. at 109. The only conclusions the court may draw are that the attached page was inadvertently omitted, or the page contained information adverse to Tharaldson. In any event, the omission of the attached page does not further Tharaldson's interest.

For the reasons stated herein, Wilber has raised a genuine issue of material fact with respect to whether Tharaldson's stated reason for terminating her was a pretext for intentional age discrimination. Berryhill's age-related statement, along with the other evidence of pretext offered, is enough for Wilber to survive summary judgment on her ADEA claim. *See Palasota*, 342 F.3d at 578. Accordingly, summary judgment is not appropriate on Wilber's ADEA claim.

### b. Title VII Claim

### i. Wilber's Prima Facie Case

Tharaldson argues that it is entitled to summary judgment on Wilber's Title VII claim because she has failed to establish a *prima facie* case of gender discrimination. To establish a *prima facie* case of gender discrimination, Wilber must show that she (1) is a member of the protected class; (2) was qualified for her position; (3) was subjected to an adverse employment action; and (4)

was replaced by someone outside the protected class, or that similarly situated persons were treated more favorably.  *Septimus*, 399 F.3d at 610 (citations omitted).

Tharaldson, citing to *Price v. Federal Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002), contends that Wilber cannot establish a *prima facie* case of wrongful discharge because she cannot show that the Assistant General Manager position was filled by a male.  It points to undisputed evidence showing Wilber was originally replaced by Strait, a woman, and argues that no competent summary judgment evidence exists indicating the gender of Strait's replacement.  It also asserts that Wilber has failed to offer evidence of disparate treatment.  Wilber counters, stating in her unverified complaint that "After terminating Wilber, Defendant replaced her with a female that was replaced by a male within no more than two weeks."[11]  Pl.'s Original Compl. ¶ 14.  Moreover, she contends that Berryhill's statement is sufficient summary judgment evidence of discriminatory intent to raise a fact issue that her gender was a motivating factor in the decision to terminate her.[12]

Although there are a number of procedural similarities between Title VII and ADEA claims, one noticeable difference is how a plaintiff may establish the fourth element of a *prima facie* case of gender or age discrimination.  As discussed previously, a plaintiff asserting an ADEA claim may establish the fourth element by showing that she was i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of her age. *Machinchick*, 398 F.3d at 350 (citing *Rachid*, 376 F.3d at 309).  Title VII case law makes clear that a plaintiff's inability to show that she was replaced by someone outside of her protected class does

---

[11]The party opposing summary judgment may not rest upon mere allegations. Fed. R. Civ. P. 56(e). Moreover, an unverified complaint does not constitute competent summary judgment evidence. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 (5th Cir. 2002) (citations omitted).

[12]Wilber could have raised a fact issue as to the fourth element of her *prima facie* case by submitting evidence that a male replaced Strait as the Assistant General Manager of the Plano Fairfield Inn.  She did not do so.

**Memorandum Opinion and Order  - Page 24**

not necessarily mean she has failed to establish a *prima facie* case of gender discrimination.  *See Williams v. Trader Publ'g Co.*, 218 F.3d 481, 485 (5th Cir. 2000); *Hornsby v. Conoco, Inc*, 777 F.2d 243, 246-47 (5th Cir. 1985).[13]  The court, however, has found no authority allowing a Title VII plaintiff to establish her *prima facie* case by showing that she was "otherwise discharged because of her gender."

Title VII cases indicate that a plaintiff who cannot show she was replaced by someone outside of her protected class is limited to presenting evidence of disparate treatment.  *See Septimus*, 399 F.3d at 609; *Byers v. The Dallas Morning News*, 209 F.3d 419, 427 (5th Cir. 2000); *Okoye v. University of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 513 (5th Cir. 2001).  The Fifth Circuit recently discussed the available methods for establishing the fourth element in *Wheeler v. BL Development Corp.*, 415 F.3d 399, 405 (5th Cir. 2005).[14]  The court in *Wheeler* held that a plaintiff may establish the fourth element by "demonstrating either that [s]he was replaced by someone outside the protected class or that other similarly situated employees outside the protected class were treated more favorably."  *Id.* at 405 (citing *Okoye*, 245 F.3d at 512-13).  Regarding the disparate treatment method, the court held that "a plaintiff must demonstrate that a 'similarly situated'

---

[13]*See also Byers v. The Dallas Morning News*, 209 F.3d 419, 426 (5th Cir. 2000) (holding that replacement by someone within the protected class is not outcome determinative, but is still a material consideration as to whether an employer actually possessed the alleged discriminatory intent).  Wilber does not mention *Williams*, *Hornsby*, or *Byers* anywhere in her briefing.

[14]*Wheeler* was a wrongful termination case based on race brought pursuant to 42 U.S.C. § 1981.  A plaintiff's § 1981 claim is analyzed under the same evidentiary standard and same burden-shifting approach as a Title VII claim.  *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000); *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403 n.2 (5th Cir. 1999).  In *Wheeler*, the court held that Appellants, who were terminated white employees, could not establish a *prima facie* case of race discrimination because they failed to show: (1) that they were replaced by non-white employees; or (2) that the evidence offered as disparate treatment demonstrated that their discharge was the result of being treated differently than non-white similarly situated employees.  *See Wheeler*, 415 F.3d at 406.

**Memorandum Opinion and Order  - Page 25**

employee under 'nearly identical' circumstances, was treated differently." *Id*. (citing *Mayberry v. Vought Aircraft Co*., 55 F.3d 1086, 1090 (5th Cir. 1995)).

Having carefully reviewed the summary judgment record and drawn all inferences in the light most favorable to Wilber, the court determines that Wilber has failed to establish a *prima facie* case of gender discrimination.  Although Wilber satisfies the first three elements, she cannot establish the fourth.  It is undisputed that Strait, a woman, replaced Wilber, and Wilber has failed to present any competent summary judgment evidence suggesting that a male replaced Strait.  Had Wilber done so, she might have raised a fact issue concerning whether Tharaldson's hiring Strait was a subterfuge for gender discrimination.  Instead, Wilber offers a "Separation Notice" showing that Strait resigned as the Assistant General Manager of the Plano Fairfield Inn after working only one day.  Pl.'s App. at 49.  This notice says nothing as to whom became, or was to become, the Assistant General Manager after Strait's resignation.

The court has also scoured Wilber's deposition transcript in its entirety.  Nowhere  does she give testimony even suggesting that a male replaced either her or Strait; instead, she states "[I] do not know that I definitely was replaced by a female employee.  I don't know who and when I was replaced, but I feel that by now, someone has taken my position."  Def.'s App. at 78.  Such testimony is at most a subjective belief, and such belief cannot be the basis for raising a genuine issue of material fact regarding discrimination.  *See Roberson v. Alltell Info. Servs*., 373 F.3d 647, 654 (5th Cir. 2004); *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002).

Moreover, Wilber has not argued disparate treatment and has put forth no evidence suggesting such treatment existed.  Wilber instead supposes that she meets the fourth element merely because she has introduced Berryhill's statement.  By doing so, she mistakenly assumes that the

court will allow her to establish a *prima facie* case of gender discrimination by introducing evidence that she was otherwise discriminated against because of her gender, without introducing either (1) evidence that she was replaced by a male; or (2) evidence of disparate treatment.  *Cf. Wheeler*, 415 F.3d at 406; *see Byers*, 209 F.3d at 427.

The court has found no Fifth Circuit precedent enabling a plaintiff asserting a Title VII claim to use a workplace remark as her sole evidence of establishing the fourth element of a *prima facie* case.  The court notes that ADEA plaintiffs may use the "otherwise discriminated against because of age" method to establish the fourth element, and, as consequence, the court in *Machinchick* held that the age stereotyping remarks offered by plaintiff gave rise to an inference that the plaintiff was terminated was because of his age.[15]  *See Machinchick*, 398 F.3d at 350, 353.  Because case law makes clear that a Title VII plaintiff has two methods of showing the fourth element, and there is no Title VII case paralleling *Machinchick* or *Palasota*, the Fifth Circuit has declined to include an "otherwise discriminated against because of gender" method as a means to establish a *prima facie* case.  *See Wheeler*, 415 F.3d at 405; *Byers*, 209 F.3d at 427.  In any event, Wilber is wrong in presuming that she may establish her *prima facie* case without presenting either evidence showing that she was replaced by a male, or evidence of disparate treatment, as such a presentation is material to establishing a presumption of gender discrimination.  *See Wheeler*, 415 F.3d at 405; *Septimus*, 399 F.3d at 609; *Byers*, 209 F.3d at 427.

For the reasons stated herein, Wilber has failed to raise a genuine issue of material fact that she, or Strait, was replaced by a male, or that her discharge was the result of being treated differently than similarly situated male employees.  She therefore cannot establish a *prima facie* case of gender

---

[15]Likewise, the court in *Palasota* held that the plaintiff was not required to offer either evidence that he was replaced by someone younger, or evidence of disparate treatment.  *See Palasota*, 342 F.3d at 576.

discrimination.  Under *McDonnell Douglas*, the court need not reach the second or third burden-shifting steps unless the requisite *prima facie* case is established.  Accordingly, judgment as a matter of law on Wilber's Title VII claim is appropriate.

### B.  Wilber's "Claim" Under Chapter 103 of the Texas Labor Code

Tharaldson argues that it is entitled to summary judgment on Wilber's "claim" under Chapter 103 of the Texas Labor Code.  The Chapter is entitled "Disclosure by Employer of Information Regarding Certain Employees or Former Employees."  *See generally* Tex. Lab. Code Ann. § 103.001-.005 (Vernon 2005).  Tharaldson contends that Chapter 103 does not create a private cause of action, but instead provides civil immunity for an employer who discloses information about a current or former employee.  Wilber asserted this "claim" in her Original Complaint, but has not addressed it in her response or offered evidence in support of the claim.  Tharaldson's arguments concerning the claim thus stand uncontroverted.  The court therefore determines that Wilber has abandoned this claim, and that it is no longer before the court.

Alternatively, the court agrees with Tharaldson that Wilber's "claim" brought pursuant to Chapter 103 of the Texas Labor Code fails to state a claim upon which relief can be granted, as Chapter 103 does not create a private cause of action.  Section 103.004(a), titled "Immunity from Civil Liability," provides as follows:

> (a) An employer who discloses information about a current or former employee under Section 103.003 is immune from civil liability for that disclosure or any damages proximately caused by that disclosure unless it is proven by clear and convincing evidence that the information disclosed was known by that employer to be false at the time the disclosure was made or that the disclosure was made with malice or in reckless disregard for the truth or falsity of the information disclosed. For purposes of this subsection, "known" means actual knowledge based on information relating to the employee, including any information maintained in a file by the employer on that employee.

Tex. Lab. Code Ann. § 103.004.   Chapter 103 is a type of qualified immunity applicable to employers who disclose information about a current or former employee's job performance to that employee's prospective employer upon the request of the employee or the prospective employer. Tex. Lab. Code Ann. § 103.003(a).   Therefore, the Chapter applies to a cause of action, but is not a cause of action itself.   *See* Tex. Lab. Code Ann. § 103.001; *Southwestern Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 625 n.51 (Tex. 2004).

Wilber has produced no evidence showing that Tharaldson made a specific statement to any prospective employer regarding her job performance at the Plano Fairfield Inn.   The only evidence of record concerning Tharaldson's communications with Wilber's prospective employers is the reference letter Thomson wrote, and this letter provided Wilber a favorable reference.   Therefore, to the extent that Chapter 103 is at all applicable to this case, the court determines that Wilber has failed to prove by clear and convincing evidence, or to raise a genuine issue of material fact, that any information disclosed was known by Tharaldson to be false at the time of disclosure, or that the disclosure was made with malice or in reckless disregard for the truth or falsity of the information disclosed.   *See* Tex. Lab. Code Ann. § 103.004(a).   Accordingly, Tharaldson is entitled to judgment as a matter of law regarding Wilber's "claim" under Chapter 103 of the Texas Labor Code.

## IV.   Plaintiff's Objections to Defendant's Summary Judgment Evidence

Wilber has filed various objections to Tharaldson's summary judgment evidence.   *See* Pl.'s Br. in Opp'n to Def.'s Mot. For Summ. J. at 3-5.   The court previously set forth the evidentiary standard upon which it relied in determining Tharaldson's Motion for Summary Judgment.   *See supra* at 9-11.   The court did not consider any evidence that did not meet this standard.   In other words, evidence that did not fall within this standard was not considered and played no part in this

decision.  Likewise, the court did not rely on any evidence that is precluded by the rules of evidence or other applicable law.  Moreover, as Tharaldson is entitled to summary judgment on Wilber's Title VII claim and Chapter 103 "claim" because Wilber failed to come forward with competent summary judgment evidence raising a genuine issue of material fact on either claim, Tharaldson's evidence is of no moment.  Further, as the court determined that summary judgment is not appropriate concerning Wilber's ADEA claim, Wilber's objections pertaining to this claim are moot.

## V.    Miscellaneous

### A.  Conduct of the Parties

The parties unnecessarily prolonged the court's disposition of Tharaldson's motion for summary judgment by the manner in which they briefed their arguments.  Wilber's brief was, at best, skeletal, similar to the bullet points presented during a Power-Point presentation.  As we all know, such presentations are truncated, and are not proper tools for providing the underlying substance needed for complex analysis.  For example, Wilber made the conclusory statement "Charles Berryhill's paper trail of negativity against Annette has no basis in fact," and then referenced 14 sections of her deposition she considered applicable, without articulating the precise manner in which the cited portions supported her claim.  The court essentially had to perform a blow-by-blow account of the evidence in reaching its decision, which could have been avoided if Wilber had done more than merely cite to pages in her deposition.

The court's criticism is not limited to Wilber.  Tharaldson made certain statements in its briefing that were overgeneralizations.  For example, one would believe from reading Tharaldson's brief that Mr. D'Onofrio wrote his letter solely to complain about Wilber, when, in actuality, the letter lodges complaints concerning numerous problems he experienced at the Plano Fairfield Inn.

Tharaldson also unnecessarily burdened the record by submitting Wilber's *entire* deposition in its Appendix, which is in clear violation of paragraph 3 of the court's Amended Scheduling Order, filed September 13, 2004.

These actions by the parties have caused the court to unnecessarily consume scarce judicial resources. If this case proceeds to trial, the court will discuss in detail with the parties what will be expected of them to ensure that trial proceeds smoothly.

### B.  Motion for Independent Mental Examination of Plaintiff

The court notes that Tharaldson filed a Motion for Independent Mental Examination of Plaintiff on May 16, 2005, to which Wilber filed a response on June 1, 2005. In its oversight, the court failed to refer the motion to a United States magistrate judge for hearing, if necessary, and determination. The court apologizes for this oversight. Tharaldson, upon receipt of this opinion and order, is directed to notify the court immediately in writing whether it still desires an independent medical examination of Wilber, and must also notify the court whether Wilber opposes such examination. The court will take action as necessary based upon the information Tharaldson provides.

### VI.   Conclusion

For the reasons stated herein, the court concludes that genuine issues of material fact exist with respect to Wilber's ADEA claim; that genuine issues of material fact do not exist with respect to Wilber's Title VII claim; and that genuine issues of material fact do not exist with respect to her "claim" brought under Chapter 103 of the Texas Labor Code. Accordingly, the court **grants in part** and **denies in part** Tharaldson's Motion for Summary Judgment. Wilber's age discrimination claim brought under the ADEA **will proceed** to trial; her gender discrimination claim brought under Title

VII and her "claim" under Chapter 103 are **dismissed with prejudice**.  The court **overrules as moot**

Wilber's Objections to Defendant's Evidence.

 **It is so ordered** this 10th day of November, 2005.


             Sam A. Lindsay
             United States District Judge

**Memorandum Opinion and Order  - Page 32**